# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MARVIN LEON GLENN,

      Petitioner,                    CASE NO. 2:14-CV-11908
                                       HONORABLE SEAN F. COX
v.                                  UNITED STATES DISTRICT JUDGE

DAVE BERGH,

      Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

      Marvin Leon Glenn, ("Petitioner"), presently incarcerated at the Thumb Correctional Facility in Lapeer, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his convictions for assault with intent to rob while unarmed, Mich. Comp. Laws, § 750.88, resisting and obstructing a police officer, Mich. Comp. Laws, § 750.81d (1), and being a fourth felony habitual offender, Mich. Comp. Laws, § 769.12.  For the reasons stated below, the petition for writ of habeas corpus is **DENIED WITH PREJUDICE.**

### I. Background

      Petitioner was originally charged with assault with intent to rob while armed, two counts of resisting and obstructing a police officer, and being a fourth felony habitual offender.  This Court recites verbatim the relevant facts regarding petitioner's conviction

from the Oakland County Circuit Court opinion denying petitioner's pre-trial motion to suppress the identification, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See e.g., Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> On April 11, 2008, two black men entered the Red Lobster in Madison Heights. One of the men, wearing dark clothing and a fake goatee, indicated he left his credit card in the restaurant the previous night with the name "Patrick Carl Jones" on it. When the employee, Bill Stanley, went into the office, the man followed and then pushed him into the office. A second suspect, wearing a wig with dread locks and a hat, then forced his way into the office yelling "Where is the money, give us all the money!" and then reached in his waistband for what witnesses thought was a gun. Another witness was in the office at the time and also observed both of the suspects. Bill Stanley began to yell "Call 911!" and pulled the fire alarm. At that time, both men ran out the front door.
>
> At that time, Devonte McClung was coming into work when he saw two black males running from the front door, one wearing a fake beard and the other wearing a wig. Both of the men ran toward a black Escalade parked on a side street.
>
> Officer Cacicedo from the Madison Heights Police Department was dispatched to the scene and obtained witness statements. After police action, both of the defendants were returned to the scene within one hour of the attempted robbery.
>
> Ms. Brzezinski and Mr. McClung positively identified both of the suspects. Ms. Brzezinski also indicated that "the two men that Madison Heights police brought to our back parking was positively identified as the two men that came into the restaurant and attempted to rob me (Red Lobster)." She indicated that Jones was the one with the fake goatee and Glenn was the individual who came into office with the dread locks. Mr. McClung also identified Glenn as the individual with the wig and Jones as the person with the fake beard.

*People v. Glenn,* No. 08-220446-FH, * 1-2 (Oakland County Circuit Court, August 8, 2008).

2

Petitioner originally planned on going to trial.  Prior to trial, Petitioner's counsel requested the trial judge to instruct the jurors on attempted armed robbery or attempted unarmed robbery as a necessarily lesser included offense of assault with intent to rob while armed.  The judge denied the request. (Tr. 8/28/08, pp. 8-9).  Petitioner then agreed to plead guilty to the lesser included offense of assault with intent to rob while unarmed, two counts of resisting and obstructing a police officer, and being a fourth felony habitual offender.  In exchange for the plea, the prosecutor agreed to dismiss the original assault with intent to rob while armed charge. (*Id.,* pp. 9-12).  Petitioner specifically acknowledged that he was unaware of any agreements other than the one placed on the record by the prosecutor. (*Id.,* p. 12).  Petitioner was advised of the rights that he would waive by pleading guilty. (*Id.,* pp. 12-15).  Petitioner admitted that on the date of the offense, he assaulted the victims with force and violence and with the intent to commit a robbery.  Petitioner further admitted to resisting and obstructing two police officers.  Petitioner lastly admitted to being a fourth felony habitual offender. (*Id.,* pp. 15-17).  The prosecutor and defense counsel both indicated on the record that there were no promises that had been made to petitioner other than those that had been placed on the record. (*Id.,* p. 17).

On the date of sentencing, Petitioner moved to withdraw his guilty plea, on the ground that he had found caselaw indicating that he was entitled to an instruction on the lesser offense of attempted robbery.  The judge denied the request. (Tr. 9/23/2008, pp. 3-4).  The judge sentenced Petitioner to fifteen to forty years in prison on the assault with intent to rob while unarmed charge as a fourth habitual offender and five to fifteen years in prison on the

3

resisting and obstructing charges as a fourth habitual offender. (*Id.,* p. 18).

Petitioner, through appellate counsel, moved to withdraw his guilty plea on the ground that he had been coerced into pleading guilty after the judge had erroneously rejected his request that the jury be instructed on the lesser offenses of attempted armed robbery or attempted unarmed robbery. (Tr. 6/10/09, p. 4). Petitioner himself addressed the court and argued that he should have been entitled to an instruction on the lesser offenses of attempted armed and unarmed robbery. Although acknowledging that his co-defendant had assaulted one of the victims by pushing him, Petitioner argued that this was not the type of assault contemplated under the assault with intent to rob while armed statute. Petitioner essentially argued that the assault with intent to rob while armed statute requires an aggravated assault with an injury to the victim. (*Id.,* pp. 8-12, 15-17). The trial judge indicated that she would issue a written ruling. (*Id.,* pp. 17-18). The judge subsequently denied the motion to withdraw the plea, on the ground that attempted robbery is not a necessarily lesser included offense of assault with intent to rob while armed but only a cognate lesser offense. *People v. Glenn,* No. 08-220446-FH, * 1-2 (Oakland County Circuit Court, June 24, 2009).

Petitioner, through newly appointed appellate counsel, filed an application for leave to appeal on the following grounds:

> I. The trial court erred by denying Glenn's motion to withdraw his guilty plea on the basis that the plea was involuntary and/or coercive.

> II. The trial court erred in the scoring of certain offense variables.

Petitioner's conviction was affirmed on appeal. *People v. Glenn*, No. 295678

4

(Mich.Ct. App. Feb. 2, 2010); *lv. den.* 486 Mich. 1048, 783 N.W.2d 374 (2010).

Petitioner then filed a post-conviction motion for relief from judgment with the trial court. While the motion was pending, Petitioner filed a petition for writ of habeas corpus, which was dismissed without prejudice on the ground that Petitioner had yet to exhaust his claims in the state courts. *Glenn v. Rapelje*, No. 2:11–CV–12759, 2011 WL 5039881 (E.D. Mich. Oct. 24, 2011). The trial court denied Petitioner's motion for relief from judgment. *People v. Glenn,* No. 08-220446-FH (Oakland County Circuit Court, Sep. 24, 2012). The Michigan appellate courts denied Petitioner leave to appeal. *People v. Glenn*, No. No. 315120 (Mich.Ct. App. Sep. 24, 2013); *lv. den.* 495 Mich. 949, 843 N.W.2d 542 (2014).

Petitioner seeks a writ of habeas corpus on the following grounds:

> I. Ineffective assistance of counsel prevented Glenn from entering a knowing and voluntary plea, where his decision to plead guilty was induced by his trial counsel's faulty legal advice.
>
> II. Glenn was denied the effective assistance of appellate counsel when she failed to pursue on direct appeal an obvious, clearly stronger claim that Glenn's trial counsel prevented him from entering a knowing and voluntary plea because of an inadequate investigation of the law and faulty legal advice which prejudiced Glenn's appeal.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless

the adjudication of the claim–

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit

6

precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

### III. Discussion

The Court discusses Petitioner's two claims together because they are interrelated. In his first claim, Petitioner claims that he was denied the effective assistance of trial counsel. In his second claim, Petitioner claims that he was denied the effective assistance of appellate counsel based on appellate counsel's failure to raise the ineffective assistance of trial counsel claim on Petitioner's direct appeal.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide

7

range of reasonable professional assistance. *Id*. In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington v. Richter*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's

performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

Petitioner initially contends that trial counsel failed to adequately investigate the law regarding whether he would be entitled to an instruction on the lesser included offenses of attempted armed robbery or attempted unarmed robbery, which lead the judge to reject counsel's request for an instruction on these offenses. Petitioner further claims that trial counsel erroneously advised him that he was not entitled to an instruction on the lesser offenses of attempted armed robbery or attempted unarmed robbery, thereby incorrectly advising Petitioner to plead guilty rather than to go to trial. Petitioner argues that but for

9

trial counsel's deficiencies, he would have not pleaded guilty but would have gone to trial.

The Supreme Court has noted that:

Acknowledging guilt and accepting responsibility by an early plea respond to certain basic premises in the law and its function.  Those principles are eroded if a guilty plea is too easily set aside based on facts and circumstances not apparent to a competent attorney when actions and advice leading to the plea took place.  Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks.  The opportunities, of course, include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve.  A risk, in addition to the obvious one of losing the chance for a defense verdict, is that an early plea bargain might come before the prosecution finds its case is getting weaker, not stronger.  The State's case can begin to fall apart as stories change, witnesses become unavailable, and new suspects are identified.

*Premo v. Moore,* 131 S. Ct. 733, 741 (2011).  The Supreme Court further admonished:

These considerations make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage.  Failure to respect the latitude *Strickland* requires can create at least two problems in the plea context.  First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real.  The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision.  There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial.  In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel.  AEDPA compounds the imperative of judicial caution.

Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect.  *Strickland* allows a defendant "to escape rules of waiver and forfeiture,".  Prosecutors must have assurance that a plea will not be undone years later because of

10

> infidelity to the requirements of AEDPA and the teachings of *Strickland*. The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

*Premo,* 131 S. Ct. at 741-42 (internal citations and quotations omitted).

Moreover, in order to satisfy the prejudice requirement for an ineffective assistance of counsel claim in the context of a guilty plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty, but would have insisted on going to trial. *Premo,* 131 S. Ct. at 743 (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)).  An assessment of whether a defendant would have gone to trial but for counsel's errors "will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill,* 474 U.S. at 59.  The Sixth Circuit has interpreted *Hill* to require a federal habeas court to always analyze the substance of the habeas petitioner's underlying claim or defense to determine whether but for counsel's error, petitioner would likely have gone to trial instead of pleading guilty. *See Maples v. Stegall,* 340 F. 3d 433, 440 (6th Cir. 2003).  The petitioner must therefore show a reasonable probability that but for counsel's errors, he or she would not have pleaded guilty, because there would have been a reasonable chance that he or she would have been acquitted had he or she insisted on going to trial. *See Garrison v. Elo,* 156 F. Supp. 2d 815, 829 (E.D. Mich. 2001).  A habeas petitioner's conclusory allegation that, but for an alleged attorney act or omission he or she would not have pleaded guilty, is therefore insufficient to prove

11

such a claim. *Id.*  The test of whether a defendant would have not pleaded guilty if he or she had received different advice from counsel "is objective, not subjective; and thus, 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Pilla v. U.S.*, 668 F. 3d 368, 373 (6th Cir. 2012)(quoting *Padilla v. Kentucky*, 559 U.S. at 372).

Petitioner has failed to show a reasonable probability that he could have prevailed had he insisted on going to trial, or that he would have received a lesser sentence than he did by pleading guilty. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 750 (E.D. Mich. 2005).  Petitioner claims that he was entitled to an instruction on the lesser offenses of attempted armed robbery or attempted unarmed robbery because they are necessarily included offenses to assault with intent to rob while armed.  Petitioner relies on the case of *People v. Bryan*, 92 Mich. App. 208, 225; 284 N.W.2d 765 (1979), in which the Michigan Court of Appeals held that attempted armed robbery is a necessarily lesser included offense of assault with intent to rob while armed.  In so ruling, the Michigan Court of Appeals in *Bryan* relied on the case of *People v. Patskan*, 387 Mich. 701, 199 N.W. 2d 458 (1972), in which a plurality of the Michigan Supreme Court held that attempted armed robbery is a necessarily lesser included offense of assault with intent to rob while armed.

In *People v. Adams*, 416 Mich. 53, 330 N.W. 2d 634 (1982), however, the Michigan Supreme Court held that the offenses of attempted armed robbery or attempted unarmed robbery are not necessarily included lesser offenses of the crimes of armed robbery or

12

unarmed robbery, but are cognate lesser included offenses of these charges and only need to be given if the facts of the case or of the defense support such an instruction. *Id.* at 57, 59-60.

Michigan's assault with intent to rob while armed statute, Mich. Comp. Laws, § 750.89, indicates that:

> Any person, being armed with a dangerous weapon, or any article used or fashioned in a manner to lead a person so assaulted reasonably to believe it to be a dangerous weapon, who shall assault another with intent to rob and steal shall be guilty of a felony, punishable by imprisonment in the state prison for life, or for any term of years.

> The elements of attempted armed robbery are:

> 1. an attempted felonious taking of property from the person of the another or in his presence;
> 2. by force and violence *or* by assault *or* by putting in fear; and,
> 3. with the defendant being armed.
> *People v. Bryan*, 92 Mich. App. at 225 (emphasis added).

> The elements of attempted unarmed robbery are:

> 1. an attempted felonious taking of property from the person of the another or in his presence;
> 2. by force and violence *or* by assault *or* by putting in fear; and,
> 3. with the defendant being unarmed.

*People v. Chandler*, 201 Mich. App. 611, 614, 506 N.W. 2d 882 (1993)(emphasis added).

Although there is no published case law which differentiates the offense of assault with intent to rob while armed from the offenses of attempted armed robbery or attempted

unarmed robbery, the Michigan Supreme Court has differentiated between the offenses of assault with intent to rob while unarmed and attempted unarmed robbery. These two offenses differ from the offenses of assault with intent to rob while armed and attempted armed robbery only in that the defendant is not armed with a weapon when he commits either of those offenses:

> The assault with intent to rob unarmed statute is conjunctive; there must be an assault with force and violence. The attempted robbery unarmed statute is disjunctive; the offense can be accomplished either by force and violence, or by assault, or putting in fear. Attempted robbery unarmed may therefore be committed simply by putting someone in fear while assault with intent to rob unarmed requires an assault with force and violence. Therefore the offenses, assault with intent to rob unarmed and attempted robbery unarmed, are different.

*People v. Sanford,* 402 Mich. 460, 473-74, 265 N. W. 2d 1 (1978).

Likewise, the crime of assault with intent to rob while armed is also a conjunctive offense which requires an assault with force or violence, whereas the lesser offenses of attempted armed robbery and attempted unarmed robbery are disjunctive, in that it may be committed by force or violence or by an assault or by putting a person in fear.

In the present case, there was ample evidence that petitioner and his co-defendant assaulted the victim and used force and violence while intending to commit a robbery. Petitioner argues that he cannot be guilty of assault with intent to rob while armed, because there was no assault of the victim, as contemplated under the assault with intent to rob while armed statute. Although acknowledging that the co-defendant's act of pushing one of the

14

victims amounts to an assault, petitioner claims that an aggravated assault, or an assault with injury, is required to satisfy the assault element for the charge of assault with intent to rob while armed.

Although the offense of aggravated assault contains the element of injury, *See* Mich. Comp. Laws, § 750.81a, it is not an element of armed robbery or assault with intent to rob while armed. *See People v. Hall*, No. 260303, 2006 WL 2000098, * 3 (Mich.Ct.App. July 18, 2006). The co-defendant's act of pushing the victim was a sufficient assault for purposes of the assault with intent to rob while armed statute. *See e.g. People v. Lomax,* No. 285954, 2009 WL 3287394, 1-2 (Mich.Ct. App. October 13, 2009).

Under Michigan law, the evidence in this case did not support an instruction for attempted armed robbery or attempted unarmed robbery, thus, any alleged deficiencies by trial counsel in requesting the lesser offenses did not amount to the ineffective assistance of counsel. *See Cathron v. Jones,*77 Fed. Appx. 835, 844-45 (6th Cir. 2003). Moreover, because Petitioner was not entitled to an instruction on the lesser offenses of attempted armed and unarmed robbery, trial counsel's advice to plead guilty a reduced charge of assault with intent to rob while unarmed, rather than to go to trial on the original assault with intent to rob while armed charge, was a reasonable strategy. *See Bonior v. Conerly,* 416 Fed. Appx. 475, 479 (6th Cir. 2010).

Petitioner further contends that trial counsel was ineffective for misleading him to believe that he could plead guilty and still preserve for appeal the trial court's pre-plea

instructional ruling.

An unconditional guilty plea constitutes a waiver of all pre-plea non-jurisdictional constitutional deprivations, *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Although Michigan law permits the entry of a conditional plea to preserve an issue for appeal, it is well settled that a conditional guilty plea requires the agreement of the defendant, the prosecution, and the court. *People v. Lannom,* 441 Mich. 490, 493, n. 5, 490 N.W.2d 396 (1992)*; People v. Reid,* 420 Mich. 326, 337, 362 N.W.2d 655 (1984); *People v. Andrews,* 192 Mich. App. 706, 707, 481 N. W. 2d 831 (1992); *People v. Kelley,* 181 Mich. App. 95, 97, 449 N.W.2d 109 (1989); M.C.R. 6.301(C)(2); *see also Brown v. Trombley,* No. 05-CV-74047-DT, 2007 WL 1013687, *3 (E.D. Mich. March 29, 2007). Michigan law parralles Fed.Rule Crim. P. 11(a)(2), which states that "[w]ith the consent of the court and the government, a defendant may enter a conditional plea of guilty."

In the present case, the judge expressly advised Petitioner that he would be waiving his right to a trial by pleading guilty. The judge and the prosecutor expressly placed the terms of the plea agreement on the record. Nowhere was there any mention that Petitioner could preserve the judge's pre-trial ruling on the instructions for appellate review. Petitioner acknowledged that he was unaware of any other promises or agreements other than those placed on the record. To the extent that Petitioner claims that his trial counsel misled him into believing that he could plead guilty and still appeal the judge's ruling, the state court judge's proper plea colloquy cured any misunderstandings that Petitioner may

16

have had about the consequences of the plea. *See Ramos v. Rogers*, 170 F. 3d 560, 565 (6th Cir. 1999); *see also U.S. v. Herrera*, 265 F. 3d 349, 351-52 (6th Cir. 2001)(defendant waived right to appeal district court's order denying pre-plea suppression motion, notwithstanding any belief of defendant that he entered conditional plea and any misstatements of defense counsel and judge that might have contributed to that belief, where there was no writing indicating that guilty plea was conditional). Petitioner has failed to show that trial counsel was ineffective.

In his second claim, Petitioner contends that appellate counsel was ineffective for failing to raise his ineffective assistance of trial counsel claim on his direct appeal.

The Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel both on appeals of right, *See Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985), and on first-tier discretionary appeals. *Halbert v. Michigan*, 545 U.S. 605, 609–10 (2005). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Because Petitioner has failed to show that his trial counsel was ineffective, Petitioner is unable to establish that appellate counsel was ineffective for failing to raise these ineffective assistance of trial counsel claims on his direct appeal. *See e.g., Fautenberry v. Mitchell,* 515 F. 3d 614, 642 (6th Cir. 2008). Petitioner is not entitled to relief on his second claim.

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny

17

a certificate of appealability to Petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because she has failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002). The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed.R.App. P. 24(a).

## V. **ORDER**

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

18

IT IS FURTHER ORDERED that Petitioner will be denied leave to appeal *in forma pauperis*.


Dated:  January 12, 2015                          S/ Sean F. Cox_____
                                                  Sean F. Cox
                                                  U. S. District Judge



I hereby certify that on January 12, 2015, the foregoing document was served on counsel of record via electronic means and upon Marvin Glenn via First Class mail at the address below:

MARVIN GLENN  195862
THUMB CORRECTIONAL FACILITY
3225 JOHN CONLEY DRIVE
LAPEER, MI 48446

                                                  S/ J. McCoy_____
                                                  Case Manager

19